**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Yvonne Alvarez,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-23-00767-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Diana Alvarez's ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on September 28, 2023, (Doc. 13), Defendant responded on November 29, 2023, (Doc. 17), and Plaintiff filed a reply on December 13, 2023, (Doc. 18). The Court now rules.

**I.  BACKGROUND**

The issue presented in this appeal is whether the ALJ erroneously rejected Plaintiff's subjective symptom testimony "in the absence of specific, clear, and convincing reasons supported by substantial evidence" when making Plaintiff's residual functional capacity ("RFC") determination. (Doc. 13 at 1).

**A. Factual Overview**

Plaintiff filed an application for disability benefits on December 15, 2015, alleging a disability period beginning on June 14, 2014. (Doc. 8-3 at 15). Her application was denied, and, after all procedural steps, the Appeals Council adopted the first administrative

law judge's ("ALJ") decision rendered on January 15, 2019. (Doc. 13 at 1). On January 5, 2021, District Judge Douglas L. Rayes reversed and remanded the first ALJ's decision, holding that "[t]he ALJ erred in rejecting Plaintiff's symptom testimony because the finding relied solely on an insufficient basis—Plaintiff's symptom testimony conflicting with the medical evidence." *Alvarez v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00264-PHX-DLR, 2021 WL 37513, at *3 (D. Ariz. Jan. 5, 2021). While Plaintiff's first appeal was pending, she filed a second application for disability benefits in March of 2020. (Doc. 13 at 2).

On remand of Plaintiff's first application, the SSA consolidated her first and second applications, and a second ALJ found Plaintiff not disabled through her date last insured in a decision rendered on December 7, 2021. (*Id.*). The Appeals Council adopted the ALJ's decision on March 14, 2023, prompting Plaintiff's appeal to this Court. (*Id.*).

### B. The SSA's Five-Step Evaluation

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine.

*Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This

includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Application of the Five-Step Evaluation Process

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 14, 2014, through her date last insured of December 31, 2019. (Doc. 9-1 at 15).

At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "multilevel degenerative disc disease; bilateral carpal tunnel syndrome; mild shoulder osteoarthritis; mild knee arthritis; bilateral lower extremity neuropathy; diabetes mellitus; obesity; and trochanteric bursitis, right hip." (*Id.* at 16).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 19). Thus, the ALJ made an RFC determination and found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except [she] can lift and/or carry up to 20 pounds occasionally; lift and/or carry up to 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour day; sit for about 6 hours per 8-hour workday with normal breaks; only occasionally operate foot controls; no climbing ladders, ropes, or scaffolds; no crawling; occasionally climb ramps or stairs; occasionally crouch, occasionally kneel, occasionally balance as defined in the DOT; frequently stoop; occasional bilateral overhead reaching; frequently handle, finger, and feel bilaterally; occasional exposure to non-weather related extreme cold, non-weather related extreme heat; occasional exposure to dangerous moving machinery, as well as unprotected heights.

(*Id.* at 21).

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a clerk, general, as that work "did not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 31).

Because the ALJ found Plaintiff to be capable of performing past relevant work, the ALJ did not proceed to step five. The ALJ found that Plaintiff was not under a disability

during the relevant time period. (*Id.*).

## II. LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick,* 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012).

On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III.   PLAINTIFF'S SYMPTOM TESTIMONY

The sole issue Plaintiff raises on appeal concerns the ALJ's rationale for discounting Plaintiff's symptom testimony. Plaintiff argues that the ALJ provided the same rationale that was "previously found deficient by Judge Rayes" in Plaintiff's first appeal. (Doc. 13 at 18). Specifically, Plaintiff first argues that the ALJ impermissibly picked out isolated reports of improvement without considering the improvement in the context of Plaintiff's symptoms and the broader record. (*Id.*). Plaintiff further argues that "stability" in her condition does not invalidate her testimony because "a condition can be stable but disabling"; she also notes that responding to treatment does not itself provide clear and convincing reasons to discount testimony. (*Id.* at 19). As for Plaintiff's daily activities, Plaintiff argues that the ALJ failed to find that "a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations, which the Ninth Circuit holds is a prerequisite for a negative credibility determination based on a claimant's activities." (*Id.* at 21). Finally, as for the ALJ's conclusion that Plaintiff's testimony was inconsistent with medical records, Plaintiff argues that "the ALJ's observations in the general medical summary were cherry-picked findings that failed to support the wholesale rejection of Alvarez's symptom testimony, given her aggressive treatment and consistent reports." (*Id.* at 22).

Defendant argues that the evidence in the record to which the ALJ cites provides a sufficient basis for this Court to find that the ALJ reasonably partially discounted Plaintiff's testimony, and further, that although Plaintiff indeed has impairments, her RFC

determination adequately accounted for said impairments. (Doc. 17 at 7). For example, Defendant argues that "[t]he Ninth Circuit has upheld an ALJ's reliance on a lack of muscle atrophy from disuse due to pain to find that the extent of a claimant's allegations were not supported." (*Id.* at 7–8). Defendant further argues that instead of cherry picking, the ALJ "acknowledged many findings that supported some degree of limitation," but cites to substantial evidence showing that Plaintiff's symptoms were "commensurate with the RFC." (*Id.* at 8). Finally, Defendant asserts that the ALJ properly noted that Plaintiff's daily activities contradicted her claims of pain and points out that this Court may not reweigh the evidence. (*Id.* at 13–14).

In Plaintiff's first appeal, District Judge Rayes found that "the ALJ did not provide 'specific, clear and convincing' reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony." *Alvarez*, 2021 WL 37513, at *4. Specifically, the previous order explained that although the ALJ stated that Plaintiff's daily activities contradict Plaintiff's testimony, the evidence in the record to which the ALJ cited in fact either did not directly support, or outright contradicted, the ALJ's statements. *Id.* The court in the previous appeal held that "[t]he reason provided for rejecting Plaintiff's symptom testimony, Plaintiff's [daily activities], was a specific, clear, and convincing reason, but here, the ALJ has not shown it was supported by substantial evidence." *Id.* Finally, the court held that inconsistency with the medical evidence cannot be the sole reason to reject Plaintiff's testimony. *Id.*

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits

solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, so the ALJ proceeded to the second step in evaluating Plaintiff's testimony. (Doc. 9-1 at 22). In the second step, the ALJ noted several reasons for finding that while Plaintiff's testimony was consistent with some limitations to Plaintiff's RFC, the testimony was inconsistent with disabling limitations.

The ALJ first addressed the inconsistencies between Plaintiff's testimony and her activities of daily living, noting the following.

> Despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including watching television, driving, using public transportation, perform[ing] household chores, and paying bills (Exs. 8E/4; 6F/3). Some of the physical and mental abilities and social interactions

> required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities diminishes the consistency of the claimant's allegations of functional limitations.

(*Id.* at 23). The ALJ properly noted these inconsistencies as relevant to the inquiry into whether Plaintiff's symptom testimony was exaggerated, as evidence of daily activities is an enumerated factor for ALJs to consider. Moreover, an ALJ need not cite to daily activities commensurate with the rigors of a full workday for the daily activities to be a relevant factor; such evidence is relevant to whether a plaintiff's symptom testimony may be exaggerated. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (approving of the ALJ's recognition that evidence of daily activities "did suggest that [the plaintiff's] later claims about the severity of his limitations were exaggerated"). Thus, especially given the ALJ's inquiry into the other factors discussed below, the Court finds no reversible error based on the ALJ's consideration of Plaintiff's daily activities. Regarding Plaintiff's daily activities, the ALJ simply noted that the activities "diminish[] the consistency" of Plaintiff's testimony, (Doc. 9-1 at 23); this is permissible.

The ALJ next discussed inconsistencies between Plaintiff's testimony and the objective medical evidence of record, dividing her discussion among the various impairments Plaintiff suffers. The Court will not reproduce the entirety of the ALJ's discussion, as it spans several pages and acknowledges a wide breadth of evidence in the record,[1] (*see id.* at 23–27), but the Court highlights some examples here. As for Plaintiff's degenerative disc disease, the ALJ noted that Plaintiff (1) "participated in physical therapy with significant improvement in her range of motion and improvement in her soft tissue mobility,"[2] (2) "was observed standing from a sitting position and si[t]ting from a standing

---

[1] The Court notes that based on the ALJ's extensive and holistic recitation of the record (which included extensive evidence that supported the presence of Plaintiff's impairments), Plaintiff's argument that the ALJ cherry-picked the evidence on which to rely is unavailing. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding that an ALJ need not discuss every single piece of evidence).

[2] The Court acknowledges Plaintiff's argument that the ALJ failed to discuss another medical evaluation noting that Plaintiff was unable to complete physical therapy due to her pain levels; however, the Court reiterates that an ALJ need only discuss probative evidence,

- 9 -

position, as well as ambulating and mounting and dismounting the examination table without apparent restrictions or limitations," (3) exhibited "grossly normal upper extremity muscle bulk," and (4) after a fall, underwent x-ray examination which "showed an intact lumbar spine with no significant change compared to a May 2016 image, and a normal sacrum and intact coccyx." (*Id.* at 23–24). As for Plaintiff's right shoulder osteoarthritis, the ALJ pointed to the following objective evidence, for example: (1) an examination showing "5/5 strength, and normal bulk and tone," (2) an image study that "revealed no acute osseous abnormality of the right shoulder," and (3) that Plaintiff's pain "was treated conservatively with right subacromial bursa injection." (*Id.* at 25). As for Plaintiff's right hip pain, the ALJ stated that (1) Plaintiff's pain was "stable with oxycodone," and (2) Plaintiff "maintained a normal gait." (*Id.*). As for Plaintiff's primary osteoarthritis, the ALJ again noted that "[e]xaminations of the right lower extremity were normal with 5/5 strength, normal bulk and tone, and no involuntary movements." (*Id.*). The Court finds that the ALJ properly utilized objective medical evidence, supported by substantial evidence in the record, as a reason to partially discount Plaintiff's testimony.[3]

The ALJ also found that Plaintiff declined multiple treatments recommended and/or offered to her, another factor that ALJs validly consider. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[U]nexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."). The ALJ noted the following: (1) "[d]espite her ongoing pain, [Plaintiff] declined a stimulator implant or epidural injection," (Doc. 9-1 at 23), and (2) "[d]espite her pain, [Plaintiff] asked to hold

---

not all evidence in the record. *See* note 1, *supra*. Upon examining the record, the evaluation to which Plaintiff cites took place on September 19, 2014, and the evaluation to which the ALJ cites in her decision took place on September 26, 2014. The Court does not find reversible error in the ALJ's election to rely on a later evaluation that likely evidenced improvement over the course of the week, especially considering the deferential standard of review at this stage.

[3] The Court acknowledges Plaintiff's argument—and the previous order's statement—that Plaintiff's testimony being inconsistent with objective medical evidence "cannot form the sole basis for rejecting a claimant's testimony," (Doc. 13 at 22 n.6), but notes that, as this Order indicates, the ALJ in this second opinion has provided several reasons, in addition to contradiction with objective medical evidence, for partially discounting Plaintiff's testimony. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis or rejecting the claimant's subjective testimony."). As such, Plaintiff's arguments to this effect are unavailing.

off on a lumbar epidural steroid injection until January 2020," (*id.* at 25). Upon examination of the record, the Court agrees that Plaintiff's elections to forego recommended treatments were either unexplained, (*see, e.g.*, Doc. 8-8 at 79), or explained simply by Plaintiff's subjective complaints of pain, (*see, e.g.*, *id.* at 188). Thus, the Court finds that the ALJ properly considered the factor of Plaintiff's inadequately explained refusal of recommended treatment when evaluating Plaintiff's subjective testimony.

Finally, the ALJ stated several instances in which Plaintiff's own conduct and statements during her treatment were otherwise inconsistent with her alleged pain levels. Namely, the ALJ noted the following: (1) "[d]espite reporting that her medication regiment did not work earlier, [Plaintiff] continued to receive refills," (Doc. 9-1 at 24), and (2) "[Plaintiff] reported that her pain was stable with her medication" and that her medication improved her quality of life by 30% on two separate occasions, (*id.* at 23, 24). The Court finds that Plaintiff's own conduct inconsistent with her alleged pain severity is a valid factor for the ALJ to consider, and that the ALJ supported this factor with substantial evidence.

Considering the foregoing, along with the ALJ's decision to limit Plaintiff's RFC significantly according to the partial weight she assigned to both Plaintiff's testimony and the objective evidence in the record as a whole, the Court finds no reversible error in the ALJ's treatment of Plaintiff's symptom testimony.[4]

## IV.   CONCLUSION

For the foregoing reasons,

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] Because the previous order remanding Plaintiff's case admonished the ALJ for citing to evidence in the record that did not support the ALJ's statements, this Court examined the ALJ's citations to the record in the present decision and verified that the ALJ's statements indeed accurately reflect the record to which she cited.

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 1st day of February, 2024.

James A. Teilborg
Senior United States District Judge